**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**PPC BROADBAND, INC.,
d/b/a PPC,**

      **Plaintiff,**      5:12-cv-911
                  (GLS/DEP)
     v.

**CORNING OPTICAL
COMMUNICATIONS RF, LLC,**

      **Defendant.**

**TIMES FIBER COMMUNICATIONS,
INC.**

      **Proposed Intervenor.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Hiscock, Barclay Law Firm | DOUGLAS J. NASH, ESQ. |
| Syracuse Office | JOHN D. COOK, ESQ. |
| One Park Place | JASON C. HALPIN, ESQ. |
| 300 South State Street | |
| Syracuse, NY 13202-2078 | |
| | |
| **FOR THE DEFENDANT**: | |
| Harter, Secrest Law Firm | DAVID M. LASCELL, ESQ. |
| Rochester Office | JERAULD E. BRYDGES, ESQ. |
| 1600 Bausch & Lomb Place | |
| Rochester, NY 14604-2711 | |
| | |
| DLA Piper LLP | JOSEPH P. LAVELLE, ESQ. |
| DC Office | ANDREW N. STEIN, ESQ. |
| 500 Eighth Avenue NW | |

Washington, DC 22004

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff PPC Broadband, Inc., doing business as PPC, commenced this action against defendant Corning Optical Communications RF, LLC,[1] for alleged infringement of four of PPC's coaxial cable connector patents. (*See generally* Am. Compl., Dkt. No. 24.) Following the parties' request for the construction of twelve disputed terms in the four patents in suit, the court referred the matter to Magistrate Judge David E. Peebles for a *Markman*[2] hearing. (Dkt. Nos. 37, 41, 42, 57, 58, 62.) In a Report and Recommendation (R&R) filed December 5, 2013, Judge Peebles recommended constructions for eight of the disputed terms, and, with respect to the remaining four, found that no construction was necessary. (Dkt. No. 64.) Pending are Corning's objections to the R&R. (Dkt. No. 96.)

---

[1] On June 27, 2014, the court approved the parties' stipulation to amend the caption in this case, in order to reflect that Corning Gilbert Inc. has changed its formal corporate name to Corning Optical Communications RF, LLC. (Dkt. Nos. 88, 102.)

[2] *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996)

2

Also pending is a motion by nonparty Times Fiber Communications, Inc., seeking to intervene in this action, for the limited purpose of objecting to the claim construction recommended in the R&R. (Dkt. No. 67.) On March 14, 2014, Judge Peebles recommended, in a second R&R, that the motion to intervene be denied in all respects. (Dkt. No. 91.) No party has filed objections to that R&R. Largely for the reasons articulated by Judge Peebles, and for the reasons that follow, all of Judge Peebles' recommendations are adopted in their entirety.

## II. Standard of Review

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4-

5.

### III. Discussion

Although there were twelve disputed terms at issue in the R&R, Corning's objections relate only to the proposed construction of four of the terms: "connector body"; "a post, engageable with the connector body"; "positioned along the post"; and "conductive coating." (Dkt. No. 96 at 9-22.) In response to Corning's objections, PPC argues that Judge Peebles' recommendations were appropriate and should be adopted by this court. (Dkt. No. 97 at 8-25.) The court will address each of the terms, and the respective recommended constructions to which Corning has objected, below.

### A. Connector Body

Judge Peebles recommended that the term "connector body" be given the construction: "structure of the connector that is secured to the post at one end and includes an open end for receiving a portion of the coaxial cable. This structure can be comprised of more than one piece, and is therefore not limited to a single integral or unitary one-piece component." (Dkt. No. 64 at 33-36.) Corning objects primarily to the second sentence of that construction, arguing that the recommended

construction is improper and that the court should strike the last sentence of the construction. (Dkt. No. 96 at 9-15.)

When faced with "an actual dispute regarding the proper scope" of a patent claim, the court must construe the allegedly infringed claim to determine its meaning and scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). In so doing, the court is cognizant that unless the patentee "acts as his own lexicographer" or "disavows the full scope of a claim term either in the specification or during prosecution," the words of a claim are "given their plain and ordinary meaning [as understood by] one of skill in the art." *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365-67 (Fed. Cir. 2012). When "the meaning of a claim term as understood by persons of skill in the art is not readily apparent," the court must construe the disputed claim terms in order to resolve such disputes. *O2 Micro*, 521 F.3d at 1360.

Here, Corning argues that Judge Peebles' recommended construction should not be adopted, because it conflicts with this court's construction of a similar term in another case. (Dkt. No. 96 at 9-10.) Specifically, Corning points to the court's construction of the term "connector body" in a different patent, from a separate case pending

5

between these two parties. *See John Mezzalingua Assocs., Inc. v. Corning Gilbert Inc.*, No. 5:11-cv-761, 2012 WL 5880674, at *1-2 (N.D.N.Y. Nov. 21, 2012). There, the court, finding that there was "neither ambiguity in the terms, nor a dispute as to the scope of the claim," gave the terms "cylindrical body member" and "connector body" their plain and ordinary meanings. *Id.* at *2. Although Corning argues that the court should follow that same course here, in this case, as Judge Peebles pointed out, the parties plainly dispute the scope of "connector body," and whether it can be more than one component or is limited to a single component piece. (Dkt. No. 64 at 35-36.) Therefore, the court is obligated to resolve this dispute in claim scope, in order to prevent the parties from impermissibly arguing claim construction, a question of law, to the jury. *See O2 Micro*, 521 F.3d at 1360 ("When the parties raise an actual dispute regarding the proper scope of . . . claims, the court, not the jury, must resolve that dispute." (citing *Markman*, 52 F.3d at 979)). Here, because there is no indication in the patents or their specifications "that the inventors intended to restrict the term connector [body] to a single unitary structure," (Dkt. No. 64 at 36), it is entitled to its full scope and there is no basis to limit it to a single or unitary one-piece component. The court therefore adopts the construction

6

recommended in the R&R.

## B.     A Post, Engageable With the Connector Body

In his R&R, Judge Peebles recommended that the term "a post, engageable with the connector body" be construed as "a post and connector body, which are separate components of the connector (*i.e.*, they are not a single integral component), that are interlocked with one another to prevent axial movement of one relative to the other." (*Id.* at 31-33.)  The primary disagreement between the parties with respect to this term is whether the post and connector body must always be separate and distinct components of a connector.  Corning asserts that this term requires no construction, and should be given its ordinary, plain meaning.  (Dkt. No. 57 at 8-9.)  Specifically, in its objections, Corning argues that Judge Peebles' recommended construction is not consistent with the entirety of the patent specifications because, while some terms referring to the post and connector body imply that they would be separate components, others, such as "attached," could potentially refer to a single, integrated body and post.  (Dkt. No. 96 at 15-18.)

However, the court finds persuasive the precedent cited by PPC in response to Corning's objections, (Dkt. No. 97 at 21), in which the Federal

Circuit held that, where a claim required components to be "affixed," "joined," "connected," or "conjoin[ed]", this "claim language fully support[ed] a requirement of separateness." *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 935, 938 (Fed. Cir. 2013). Similarly, as Judge Peebles noted in his R&R, clarifying that the connector body and post are not part of a single unitary piece is consistent with the ordinary meaning of this term, as the limitations that these components be "engageable," "configured to engage," or "attached" would be superfluous and unnecessary if the body and post constituted a single component. (Dkt. No. 64 at 32-33.) Accordingly, the court adopts the recommended construction of this term.

C.  **Positioned Along the Post**

With respect to this term, Judge Peebles recommended that it be defined as "located a point on the length of the post, and behind the first surface of the internal lip of the nut." (*Id.* at 28-31.) As above, Corning argued that no construction of this term is necessary, (Dkt. No. 42 at 24), and, in its objections, it takes issue with the apparent limitation in the claim which requires that the continuity member be located "behind" the nut, (Dkt. No. 96 at 18-20). While Judge Peebles acknowledged that "positioned

8

along the post" is a commonly understood phrase that ordinarily would not require further construction or modification by the court that would restrict the term, he noted that the patentee in this case has disavowed the full scope of positioning, and has limited this claim term to mean only continuity members that are located behind the nut, so as not to include positioning of the continuity member in front of the first surface of the lip of the nut. (Dkt. No. 64 at 28-31.) It is to this particular aspect of the recommendation that Corning objects. Specifically, Corning argues that disavowal of the full scope of the term has not occurred here, as there has been no clear and unambiguous disclaimer of the full scope. (Dkt. No. 96 at 18-20.)

A patentee may avoid attributing the customary and ordinary meaning to a claim term if "the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1366. "To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'" *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (quoting *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009)).

The court disagrees with Corning's argument that the disavowal here

9

is insufficiently clear and unambiguous. (Dkt. No. 96 at 18-20.) Although the language of the claims of the patent at issue teach "a continuity member, positioned along the post . . . to contact the post[ ] and . . . the second surface of the internal lip of the nut," (Dkt. No. 24, Attach. 1 at 70), the patent specification plainly states that "all continuity members . . . reside rearward of the . . . lip of the nut," (*id.* at 66). Further, during patent prosecution, in communications with the Patent and Trademark Office, the inventors distinguished their invention from similar prior art based at least in part on the fact that, in the prior art, the continuity member was in front of ("axially forward") the lip of the nut, unlike the patented invention at issue here, where the continuity member is located behind the lip of the nut. (Dkt. No. 41, Attach. 10 at 17-18.) The court therefore finds that the patentee's disavowal of the full scope of this term was sufficiently clear and unambiguous, *see Thorner*, 669 F.3d at 1366, and thus adopts Judge Peebles' recommended construction.

**D.     Conductive Coating**

Judge Peebles recommended that "conductive coating" be given the construction: "a layer of material that is conductive." (Dkt. No. 64 at 45-47.) Specifically, he declined to import Corning's suggested limitation on this

term, which purports to require that the conductive material be applied by a coating process to a non-conductive surface, (Dkt. No. 42 at 18), because this limitation came only from one example cited in the patent, and not from the patent claims or patent specification, (Dkt. No. 64 at 46-47); *see Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 792 (Fed. Cir. 2010). Corning's objections to the construction of "conductive coating" consist of arguments it already presented to Judge Peebles in its opening claim construction brief. (*Compare* Dkt. No. 42 at 18-20, *with* Dkt. No. 96 at 21-22.) Despite its claim that the entire R&R is reviewed *de novo*, (Dkt. No. 96 at 7), the court need only conduct a clear error review with respect to arguments that have already been submitted to the Magistrate Judge. *See Almonte*, 2006 WL 149049, at *4. Having reviewed those arguments and the remainder of Judge Peebles' R&R for clear error, and finding none, and for the reasons discussed in the sections above, the court accepts and adopts Judge Peebles' claim construction R&R in its entirety.

**E.   Motion to Intervene**

In a second R&R, Judge Peebles addressed Times Fiber's motion seeking leave to intervene in this action, solely for the purpose of objecting to the proposed claim construction. (Dkt. No. 91.) He recommended that

11

the motion be denied because Times Fiber had not demonstrated any legally recognized interest that would be affected if it were prevented from intervening in this action, and, even if it had, no ruling on claim construction here would be binding in PPC's action against Times Fiber. (*Id.* at 9-11.) Further, he recommended that the court decline to exercise its discretion to allow permissive intervention. (*Id.* at 11-12.) No objections having been filed to Judge Peebles' recommendation that this motion be denied in its entirety, the court has reviewed this recommendation for clear error and found none. *See Almonte*, 2006 WL 149049, at *4-5. Accordingly, the second R&R is adopted in its entirety, and the motion to intervene is denied.

### IV. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge David E. Peebles' December 5, 2013 Report and Recommendation (Dkt. No. 64) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the following meanings shall be affixed to the patent claim terms in dispute:

Disputed TermProposed Construction

| | |
|---|---|
| *Continuity Member* | "conductive component that provides continuity of grounding" |
| *Electrical Grounding Continuity and/or Electrical Continuity* | No construction necessary |
| *Positioned Along the Post* | "located a point on the length of the post, and behind the first surface of the internal lip of the nut" |
| *A Post, Engageable with the Connector Body* | "a post and connector body, which are separate components of the connector (*i.e.*, they are not a single integral component), that are interlocked with one another to prevent axial movement of one relative to the other" |
| *Connector Body* | "structure of the connector that is secured to the post at one end and includes an open end for receiving a portion of the coaxial cable. This structure can be comprised of more than one piece, and is therefore not limited to a single integral or unitary one-piece component" |
| *Flange of the Post* | "a rim, edge, rib, or collar, protruding from the post that can include one or more steps" |
| *Lip Surface* | "a surface of the flange of the post that extends from the rearward facing flange surface toward the rearward post" |
| *The Nut Does Not Touch the Connector Body* | No construction necessary |

13

| | |
|---|---|
| *Prevents the Connector Body from Contacting the Nut* | No construction necessary |
| *Conductive Coating* | "a layer of material that is conductive" |
| *Obtains Electrical Continuity* | "extends and maintains a consistent electrical ground path through the nut and the post" |
| *Coaxial Cable Includes a Center Conductor Surrounded by a Dielectric Covered by a Conductive Grounding Shield, the Conductive Grounding Shield Being Configured to Be Surrounded by a Protective Outer Jack[et]* | No construction necessary |

**ORDERED** that Magistrate Judge David E. Peebles' March 14, 2014 Report and Recommendation (Dkt. No. 91) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Times Fiber's motion for leave to intervene in this action (Dkt. No. 67) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 21, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

14